IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF NAYSHAUN UCH WILLIAMS, by and through its Administrator, AISHA CLAYTON | : : : : |
| Plaintiff, | : : |
| v. | : Civil No. _____ |
| | : JURY TRIAL DEMANDED |
| CITY OF PHILADELPHIA, PHILADELPHIA DEPARTMENT OF HUMAN SERVICES, FELICIA R. HARRISON, ASHLEY JOHN DWAYNE C. JONES, ALONZO LYAS, TURNING POINTS FOR CHILDREN, VOLIEDA HAMM, DWYONE SANDERS, VONTELLE KNIGHT, GREATER PHILADELPHIA COMMUNITY ALLIANCE, AVA HARRIS, MONICA COOK, and JANE/JOHN DOES 1-30 | : : : : : : : : : : : : : : |
| Defendants. | : : |

**CIVIL ACTION COMPLAINT**

Plaintiff Estate of Nayshaun Uch Williams, by and through its Administrator, by the undersigned attorneys, brings this civil action against the above-named Defendants and complains as follows:

**JURISDICTION AND VENUE**

1. Federal jurisdiction in this matter is asserted pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 1983 (civil rights), and 28 U.S.C. § 1367 (supplemental jurisdiction over

1

state law claims).

2. Venue is properly laid within the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) and (c), as the events giving rise to this action occurred in Philadelphia County, Pennsylvania.

## NATURE OF THE CASE

3. This is a civil rights action arising from the tragic and preventable death of 11-year-old Nayshaun Uch Williams, who died on October 28, 2023, from a severe asthma attack after Defendants repeatedly ignored clear warning signs of medical neglect and child endangerment.

4. Despite multiple reports to DHS about Nayshaun being sent to school without his rescue inhaler, missing excessive days of school, and living in dangerous conditions with a registered sex offender, Defendants systematically failed to protect this vulnerable child, closing their investigation as "unfounded" just one week before his death.

5. Nayshaun's death was not merely foreseeable—it was predictable and preventable, resulting directly from Defendants' indifference to his safety and constitutional rights.

## PARTIES

6. Plaintiff Estate of Nayshaun Uch Williams is administered by Aisha Clayton, who brings this action on behalf of Nayshaun Williams, who at all relevant times was a child residing at 2135 East Sanger Street, Philadelphia, PA 19134.

7. Defendant City of Philadelphia is a city, political subdivision, and governmental entity of the Commonwealth of Pennsylvania, with a principal place of business at City Hall, 1400 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103.

8. Defendant Philadelphia Department of Human Services ("DHS") is a municipal agency of the City of Philadelphia, organized and existing under the laws of the Commonwealth of Pennsylvania, with a business address of 1515 Arch Street, Philadelphia, Pennsylvania 19102. DHS is responsible for the safety and well-being of children at risk of abuse, neglect, and dependency. DHS contracts with private agencies to provide protective services on behalf of the Commonwealth and City, making these contractors state actors for purposes of 42 U.S.C. § 1983.

9. Defendant Felicia R. Harrison was at all relevant times a DHS employee who participated in investigations involving Nayshaun. She is sued in her individual capacity.

10. Defendant Ashley John was at all relevant times a DHS employee who participated in investigations involving Nayshaun. She is sued in her individual capacity.

11. Defendant Dwayne C. Jones was at all relevant times a DHS employee who participated in multiple investigations involving Nayshaun. He is sued in his individual capacity.

12. Defendant Alonzo Lyas was at all relevant times a DHS employee who participated in investigations involving Nayshaun. He is sued in his individual capacity.

13. Defendants John/Jane Does 1-10 are DHS employees whose identities are currently unknown but who participated in the pattern of deliberate indifference to Nayshaun's safety.

14. Defendant Turning Points for Children ("TPFC") is a Pennsylvania nonprofit corporation that contracted with DHS to provide in-home child welfare services. TPFC's principal place of business is 3300 Henry Avenue, Philadelphia, PA 19129. By accepting DHS contracts and assuming state responsibilities for child protection, TPFC acted under color of state law and is subject to liability under 42 U.S.C. § 1983.

15. Defendant Volieda Hamm was at all relevant times a caseworker employed by TPFC, assigned to provide in-home services to Nayshaun Williams and his family. She is sued in her individual capacity.

16. Defendant Dwyone Sanders was at all relevant times a supervisor employed by TPFC, responsible for supervising Nayshaun's case. He is sued in his individual capacity.

17. Defendant Vontelle Knight was at all relevant times an administrator employed by TPFC, responsible for case oversight. She is sued in her individual capacity.

18. Defendants John/Jane Does 11-20 are TPFC employees whose identities are currently unknown but who participated in providing inadequate services to Nayshaun. They are sued in their individual capacities.

19. Defendant Greater Philadelphia Community Alliance ("GPCA"), formerly known as United Communities of Southeast Philadelphia ("United Communities"), is a Pennsylvania nonprofit corporation that contracted with DHS to provide in-home child welfare services. GPCA has a place of business is 1529 S 22nd St, Philadelphia, PA 19146 . By accepting DHS contracts and assuming state responsibilities for child protection, United Communities acted under color of state law and is subject to liability under 42 U.S.C. § 1983.

20. Defendant Ava Harris was at all relevant times a United Communities case manager who participated in investigations involving Nayshaun. She is sued in her individual capacity.

21. Defendant Monica Cook was at all relevant times a United Communities supervising case manager who participated in investigations involving Nayshaun. She is sued in her individual capacity.

22. Defendants John/Jane Does 21-30 are United Communities employees whose

4

identities are currently unknown but who participated in providing inadequate services to Nayshaun. They are sued in their individual capacities.

## FACTUAL BACKGROUND

### DHS' Historical Pattern and Practice of Neglect and Recklessness

23. Defendant DHS has demonstrated a persistent pattern of failing to protect vulnerable children, dating back to before the 2012 establishment of the Community Umbrella Agency (CUA) system in which it employed Defendant TPFC.

24. The tragic 2006 death of 14-year-old Danieal Kelly exemplifies this systemic negligence and recklessness—Kelly died from starvation while actively receiving DHS services, covered in bruises and bedsores, weighing only 42 pounds.

25. Despite a grand jury finding that DHS social workers had simply failed to follow prescribed procedures and that Kelly would be alive had they done so, DHS proceeded with the CUA restructuring rather than addressing fundamental worker accountability issues.

26. This pattern continued under the CUA system, as evidenced by the 2022 death of 3-year-old Hope Jones, who died from multiple blunt-force trauma injuries while in the care of Northeast Treatment Centers, a case that settled for $6.5 million.

27. Similarly, in 2020, a 3-year-old boy identified as T.E. was found with fresh bruises, malnourishment, bradycardia from extreme dieting, and marks suggesting he had been tied—all while under the supervision of Defendant TPFC.

28. In both cases, a lack of responsible oversight by DHS was present as well as irresponsible supervision by the CUA caseworkers involved.

29. Upon information and belief, CUA caseworkers, including the named Defendants in this lawsuit, are trained by Defendant DHS.

30. Between 2012 and 2024, nearly 70 lawsuits were filed against the CUAs, including Defendants TPFC and GPCA/United Communities, for allegedly allowing children in their care to be hurt, killed, assaulted, burned, beaten, and sexually abused, with at least 50 of these lawsuits resulting in settlements or verdicts of $1 million or more.

31. A recent study revealed that between 2017 and 2022 alone, Philadelphia investigated almost 900 reports of abuse or neglect to children in government care and confirmed 186 cases, though these numbers likely represent significant undercounts.

32. DHS's inadequate oversight of the CUAs is further demonstrated by systemic failures in placement decisions—at least five lawsuits involved children with serious medical needs who were placed in regular foster homes lacking required medically trained caregivers, including four death cases.

33. This occurred because CUA staff failed to inform DHS's referral unit about children's medical conditions, or because DHS workers failed to adequately review children's files before making placements.

34. DHS and the CUAs it employs fail to maintain manageable caseloads—with workers regularly handling 11 to 20+ *families* despite a stated goal of 10 and industry standards recommending 12-15 *individual children, not families,* per worker.

35. In 2021, it was discovered that Defendant TPFC offered $500 bonuses to staff to take on more than 13 cases each.

36. The failure of Defendants DHS, TPFC and United Communities to maintain manageable caseloads has created conditions where proper supervision and investigation of abuse reports becomes virtually impossible, perpetuating a cycle of neglect that has resulted in preventable harm and death to children ostensibly under the agency's protection.

### Nayshaun's Medical Condition and Living Situation

37. Nayshaun Williams was an 11-year-old child with severe asthma, a life-threatening condition requiring daily management and immediate access to rescue medication.

38. Nayshaun lived with his grandmother, Patricia Clayton, at 2135 East Sanger Street, Philadelphia, who was his legal guardian.

39. Despite his serious medical condition, Nayshaun was repeatedly sent to school without his rescue inhaler, an essential life-saving medication.

40. The home environment included Patricia Clayton's boyfriend, who was a registered sex offender and had regular, unsupervised contact with Nayshaun.

### The 2019 DHS Investigation

41. In February 2019, DHS received reports regarding sexual abuse concerns involving Nayshaun and initiated an investigation.

42. It was reported to DHS that a registered sex offender, lived at Nayshaun's home, walked Nayshaun to school daily and had made grooming statements to Nayshaun and other children.

43. DHS dismissed concerns about this person, falsely claiming the person did not live in the home, despite family reports that the person was present daily and had unsupervised access to Nayshaun.

44. However, DHS substantiated an allegation that six-year-old Nayshaun was sexually acting out with a younger cousin, demonstrating concerning sexualized behaviors.

45. Despite serious allegations and the presence of a registered sex offender in the home with regular access to a traumatized child exhibiting sexual reactive behaviors, Defendant Alonzo Lyas and other DHS workers closed the investigation without taking protective action.

46. Following the February 2019 DHS investigation, the agency referred Nayshaun to TPFC for contracted services.

47. Upon information and belief, DHS contracted with TPFC to provide in-home safety services which included case management, coordination of therapeutic services, monitoring of family compliance, and ensuring Nayshaun received the CUA services (therapy) that DHS had determined were necessary.

### TPFC's Contracted Responsibilities and State Actor Status

48. On or about February 26, 2019, TPFC began providing in-home safety services to Nayshaun and his family.

49. TPFC assigned Defendants Volieda Hamm (caseworker), Dwyone Sanders (supervisor), and Vontelle Knight (administrator) to oversee Nayshaun's case and ensure all therapeutic goals were achieved before case closure.

50. DHS and TPFC case notes document that Patricia Clayton, Nayshaun's grandmother, told DHS that she would not transport Nayshaun to therapy.

51. TPFC case notes further document that the "family chose to not sign CBH collaterals" necessary to coordinate behavioral health services for Nayshaun's documented sexual reactive behaviors and grief.

52. Upon information and belief, CBH stands for Community Behavioral Health.

53. This refusal occurred within the first weeks of service provided by TPFC, yet Defendants Hamm, Sanders, and Knight took no meaningful action to address this critical barrier to treatment.

54. Upon information and belief, TPFC terminated services on July 10, 2019, after only 4.5 months.

8

55. DHS's case file for Nayshaun contains no TPFC home visit notes that document conditions in the home, no therapy progress notes, no documentation of attempts to address grandmother's non-compliance, and no explanation for why services were terminated without the goals achieved.

56. By closing Nayshaun's case with zero goals achieved and imposing no consequences for Patricia Clayton's refusal to provide necessary care, TPFC sent a clear and deadly message: medical and therapeutic neglect of this vulnerable child would be tolerated without accountability.

### The Pattern Continues: 2019-2023

57. Following TPFC's premature case closure in July 2019, Nayshaun remained in Patricia Clayton's care with no oversight, no therapy, and no consequences for the grandmother's inability to provide adequate care.

58. Over the next four years, multiple warning signs emerged that should have triggered renewed DHS intervention:

　　a.　Chronic truancy and educational neglect;

　　b.　Continued presence of the registered sex offender in the home;

　　c.　Missed medical appointments;

　　d.　Reports from school officials about Nayshaun's untreated medical needs;

　　e.　Ongoing reports to DHS about conditions in the home; and

　　f.　Patricia Clayton's pattern of unmedicated mental health conditions and substance use.

59. Each time concerns were reported to DHS during this period, investigations were opened and closed without meaningful intervention, reinforcing the pattern established in 2019.

60. Nadira Duckett made repeated attempts to report concerns to DHS but was told the cases were closed or unfounded.

61. Defendant Dwayne C. Jones was a DHS case worker assigned to Nayshaun's family.

62. Defendant Dwayne C. Jones specifically told family members that cases were closed, without explaining what investigation had been conducted or what findings had been made.

63. On May 15, 2023, DHS received a referral alleging Patricia Clayton failed to provide adequate nurturing/affection, basic needs, and that Nayshaun was ungovernable.

64. Specifically, Nayshaun brought vapes to school, and had been in multiple fights in school and the community. He cut another child with a knife, and "vandalizes and terrorizes the neighborhood."

65. It was noted that Patrica Clayton would be relieved at CPS involvement because she cannot handle the child.

66. Investigator Felicia R. Harrison and Supervisor Ashley John closed this investigation as "Invalid" on July 7, 2023, finding "insufficient evidence" despite documented concerns about the Nayshaun's welfare.

### The Critical October 2023 Crisis

67. Due to severe asthma, Nayshaun frequently experienced respiratory distress at school.

68. The school nurse at Sullivan Elementary School, where Nayshaun was a student, made at least 13 attempts throughout the 2023-2024 school year to contact Patricia Clayton about Nayshaun's severe asthma, his repeated absences from school, and his lack of rescue inhaler.

69. By October of the 2023-2024 school year, Nayshaun had already missed 20 days of school.

70. On September 6, 2023, when Nayshaun had difficulty breathing at school and experienced an asthma attack, the school nurse attempted to contact Patricia Clayton but could not reach her despite multiple calls.

71. With Nayshaun in respiratory distress and unable to reach his guardian, the school nurse was forced to call 911 and have Nayshaun transported by ambulance to the hospital.

72. Following this emergency, the school nurse specifically reported to DHS that Nayshaun was being repeatedly sent to school without his rescue inhaler, this was a life-threatening situation for a child with severe asthma, Patricia Clayton was not responding to school communications, Nayshaun had already missed 20 days of school, and the nurse believed Nayshaun was being medically neglected and needed immediate intervention.

73. The school nurse explicitly told DHS she believed Nayshaun was being neglected and that his life was at risk without his rescue inhaler.

74. DHS Investigator Dwayne C. Jones handled this investigation.

75. Despite the school nurse's ongoing attempts to address Nayshaun's missing inhaler since at least 2021, with reports documenting "student has a history of asthma with no inhaler in school or on his person," Jones assessed the charge of abuse as "unfounded" on October 5, 2023.

76. DHS workers who handled the October 2023 investigation were dismissive and rude to the school nurse, minimizing her professional concerns instead of recognizing it as a life-threatening emergency.

77. Following the asthma attack, DHS nurse Mary Anne Clayton made appointments

for Nayshaun to be seen at Children's Hospital of Philadelphia and Juniata Family Practice on October 13, 2023, and October 16, 2023 respectively.

78. DHS arranged transportation for the October 13th appointment, but Patrica Clayton refused to go, even with transportation waiting outside the home.

79. The October 16th appointment was also missed without explanation.

80. Neither appointment was rescheduled.

81. DHS did not take any action once these appointments were missed.

82. DHS failed to remove Nayshaun or arrange supervised medical care when Patricia Clayton caused Nayshaun to miss his appointments.

83. Despite this, DHS closed its investigation of medical neglect, as "Unfounded" on October 19, 2023

84. During this time, United Communities also provided services to Nayshaun.

85. Just as with DHS and TPFC, United Communities failed to protect Nayshaun.

86. Defendant Ava Harris was the case manager assigned to the family and Defendant Monica Cook was the assigned case management supervisor.

87. United Communities had a duty to monitor Nayshaun's welfare, knew or should have known about his medical neglect, and failed to take action to protect him.

88. Specifically, United Communities failed to make sure proper support was in place to address Nayshaun's needs.

89. DHS's case file for Nayshaun contains no United Community home visit notes documenting conditions in the home, no therapy progress notes, no documentation of attempts to address Nayshaun's needs, and no explanation of what the goals of service were.

**The Fatal Asthma Attack: October 28, 2023**

90. On the morning of October 28, 2023, at approximately 8:00 AM, Nayshaun woke his grandmother stating he could not breathe.

91. Patricia Clayton attempted to use a nebulizer machine to treat Nayshaun's asthma attack. The nebulizer was positioned on the dining room table next to a hookah, evidencing the unsafe conditions in the home.

92. The nebulizer treatment was ineffective because Nayshaun needed his fast-acting rescue inhaler.

93. He did not have his rescue inhaler because Patricia Clayton had failed to maintain his medication—exactly what the school nurse had reported to DHS weeks earlier.

94. Emergency services were called, but by the time paramedics arrived and transported Nayshaun to the hospital, it was too late.

95. Nayshaun Williams, age 11, was pronounced dead on October 28, 2023, from a severe asthma attack.

96. This death was entirely preventable.

**COUNT I: VIOLATION OF 42 U.S.C. § 1983**
**(Against Individual DHS Defendants: Lyas, Harrison, John, Jones; Individual GPCA Defendants: Harris, Cook; Individual TPFC Defendants: Hamm, Sanders, Knight; City of Philadelphia, DHS, TPFC, and GPCA)**

97. Plaintiff realleges and incorporates by reference all other allegations of this Complaint as if fully set forth herein.

98. This is a civil rights claim brought pursuant to 42 U.S.C. §1983 that challenges the constitutionality of Defendants' actions, which caused Nayshaun devastating death.

99. At all relevant times, Nayshaun had substantive and procedural due process rights to be free from state-created dangers or risks that could cause significant bodily harm, as bodily integrity and human dignity are protected by the United States Constitution.

100. At all times relevant to this action, Individual Defendants, GPCA, TPFC, the City of Philadelphia, and DHS, and its agents and servants were acting under the color of state law.

101. The injuries sustained by Nayshaun, while in the care of Patricia Clayton, were foreseeable to Individual Defendants, GPCA, TPFC, the City, and DHS, who had actual knowledge that Patricia Clayton was refusing to cooperate with service, that there existed a clear risk she would not provide necessary care, that she was an unfit caregiver, and that there existed a clear risk of medical neglect leading to death.

102. The actions and conduct of Individual Defendants, GPCA, TPFC, DHS, and the City were a substantial and direct factor in causing the death of Nayshaun.

103. The actions and conduct of Individual Defendants, GPCA, TPFC, DHS and the City with respect to the investigations of Nayshaun's care and oversight of his safety were reckless, willful, and wanton, in reckless disregard of the safety and well-being of Nayshaun, and of a degree of culpability that shocks the conscience.

104. Based on, among other things, their responsibility for Nayshaun and their statutory obligation to ensure that he was safe and properly cared for, Individual Defendants had a duty to protect Nayshaun from medical neglect.

105. Individual Defendants, GPCA, TPFC, DHS and the City, acting under color of state law, affirmatively caused Nayshaun to be subjected to the deprivation of rights, privileges, and immunities secured to him by the Constitution and law. 42 U.S.C. § 1983.

106. The actions and conduct of Individual Defendants, GPCA, TPFC, DHS and the City with respect to the investigations and oversight were part of a pattern and practice of closing cases without adequate investigation and a failure to exercise appropriate supervision and intervention.

107. By opening investigations, closing them as "unfounded" despite clear evidence of medical neglect, dismissing mandatory reporters, and failing to ensure Nayshaun had access to life-saving medication, Individual Defendants, GPCA, TPFC, DHS and the City, as state actors, affirmatively used their authority in a way that created and perpetuated a known and obvious danger to Nayshaun, and that rendered him vulnerable to the known unsafe and dangerous conditions present in Patricia Clayton's care.

108. TPFC Defendants created a danger to Nayshaun by failing to conduct adequate home visits or document family engagement during the 2019 service period.

109. TPFC Defendants created a danger to Nayshaun by closing his case despite documented evidence that Patricia Clayton stated "she will not be transporting VC to therapy" and the family "chose to not sign CBH collaterals."

110. TPFC Defendants created a danger to Nayshaun by failing to report Patricia Clayton's non-compliance to DHS or the court and failing to recommend continued supervision.

111. TPFC Defendants created a danger to Nayshaun by terminating services while he had received zero therapy sessions for sexual reactive behaviors or grief counseling, leaving him without treatment.

112. TPFC Defendants created a danger to Nayshaun by establishing a pattern where Patricia Clayton learned she could refuse to provide necessary care without consequences, a pattern that continued until it killed him in 2023.

113. GPCA Defendants Ava Harris and Monica Cook created a danger to Nayshaun in 2023 by failing to adequately monitor his medical needs despite being assigned as his case manager and supervisor.

114. GPCA Defendants created a danger to Nayshaun by failing to respond to or

escalate concerns about his chronic school absences, lack of rescue inhaler, and medical neglect during the 2023 service period.

115. GPCA Defendants created a danger to Nayshaun by failing to ensure Patricia Clayton was complying with medical care requirements, despite knowing of his severe asthma and the history of non-compliance documented by TPFC in 2019.

116. GPCA Defendants created a danger to Nayshaun by failing to coordinate with DHS investigators during the October 2023 medical neglect investigation and failing to provide critical information about ongoing service provision and observed neglect.

117. GPCA Defendants created a danger to Nayshaun by continuing to provide inadequate services without meaningful intervention right up until his death, reinforcing Patricia Clayton's belief that medical neglect would be tolerated.

118. Individual Defendants created a danger to Nayshaun by failing to follow DHS regulations, failing to complete timely, accurate, and complete reports about Nayshaun, and failing to report the medical neglect to others who could have intervened on his behalf, such as medical providers.

119. DHS Defendants created a danger to Nayshaun by dismissing and being rude to the school nurse who reported the medical neglect, discouraging advocacy on his behalf.

120. DHS Defendants created a danger to Nayshaun by closing multiple investigations from 2019 through 2023 without meaningful intervention.

121. GPCA Defendants Ava Harris and Monica Cook specifically created a danger to Nayshaun by providing inadequate services in 2023, failing to monitor his medical needs, and failing to report Patricia Clayton's ongoing medical neglect to DHS despite being actively involved with the family at the time of his death.

122. Defendants' actions rendered Nayshaun more vulnerable to danger than had they never affirmatively intervened, teaching Patricia Clayton that medical and therapeutic neglect would be tolerated. However, through their affirmative actions, Defendants also subjected Nayshaun to harm.

123. As a direct and proximate result of Defendants' violations of Nayshaun's constitutional rights, Plaintiff has suffered devastating injuries, including death.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983
### (Against TPFC, GPCA, City of Philadelphia and DHS)

124. Plaintiff realleges and incorporates by reference all other allegations of this Complaint as if fully set forth herein.

125. Plaintiff brings this civil action against TPFC, GPCA, DHS, and the City of Philadelphia pursuant to the rights set forth in 42 U.S.C. § 1983, and the doctrinal tenets of the case law interpreting this statute and seeks all damages cognizable by law against these defendants.

126. The conduct of TPFC, GPCA, DHS and the City of Philadelphia, as set forth above, pursuant to the policies and customs of DHS, violated Nayshaun's rights pursuant to the Fourteenth Amendment to the United States Constitution, by, *inter alia*:

   a. creating and having a policy, practice, and custom of failing to review adequately whether children in its care were receiving proper medical care from their caregivers;

   b. creating and having a policy, practice, and custom of failing to keep adequate records, and failing to enforce any record-keeping rules it did have;

   c. creating and maintaining a policy, practice, or custom of inadequate investigations;

   d. creating and maintaining a policy, practice, and custom of failing to supervise

employees providing oversight to at-risk children that DHS was monitoring;

e.  creating and maintaining a policy, practice, and custom of accepting family noncompliance without enforcement, escalation, or reporting to DHS or courts;

f.  creating and maintaining a policy, practice, and custom of failing to train employees on enforcing service plan compliance and recognizing when services must be extended;

g.  creating and maintaining a policy, practice, and custom of failing to discipline employees who closed cases without achieving goals

h.  creating and maintaining a policy, practice, and custom of failing to train employees on recognizing life-threatening medical neglect such as a child with severe asthma lacking rescue medication.

127.  These policies, practices, and customs caused Nayshaun to remain in a medically neglectful situation, to be denied necessary therapeutic services, established a pattern of neglect without consequences, and ultimately contributed to his death in 2023

### COUNT III: NEGLIGENCE
(Against All Individual Defendants, GPCA and TPFC))

128.  Plaintiff realleges and incorporates by reference all other allegations of this Complaint as if fully set forth herein.

129.  Defendants owed Nayshaun a duty of reasonable care to provide for his safekeeping, care, and protection.

130.  Defendants breached that duty by failing to protect Nayshaun from medical neglect, closing his case without ensuring his safety, accepting Patricia Clayton's refusal to cooperate with services and failing to report non-compliance to DHS or the court.

131.  Defendants knew or should have known that Nayshaun was in an unsafe

environment, and by failing to protect him, caused his death.

132. As a direct and proximate result of the aforementioned conduct, Nayshaun suffered severe emotional and physical trauma and death.

## COUNT IV: WRONGFUL DEATH
### (Against All Individual Defendants, GPCA and TPFC)

133. Plaintiff incorporates all preceding allegations.

134. The Pennsylvania Wrongful Death Act, 42 Pa.C.S. § 8301, provides recovery for pecuniary loss suffered by beneficiaries due to wrongful acts causing death.

135. Defendants' deliberate indifference to Nayshaun's medical needs directly caused his death on October 28, 2023.

136. Nayshaun's survivors, including siblings Tynan Williams-Hughes and Timmiyah Garland, suffered pecuniary losses including loss of companionship, society, and comfort.

137. TPFC's 2019 failure to ensure therapy and medical compliance created the dangerous precedent that killed Nayshaun four years later.

## COUNT V: SURVIVAL ACTION
### (Against All Individual Defendants, GPCA and TPFC)

138. Plaintiff incorporates all preceding allegations.

139. The Pennsylvania Survival Act, 42 Pa.C.S. § 8302, preserves causes of action Nayshaun could have brought had he survived.

140. Before death, Nayshaun experienced conscious pain and suffering during his fatal asthma attack, struggling to breathe while lacking his rescue inhaler.

141. Nayshaun suffered fear, anxiety, and distress from repeated episodes of being unable to breathe at school without medication.

142. These defendants' acts caused Nayshaun's pre-death pain, suffering, and loss of

life's pleasures.

143.    TPFC specifically caused ongoing harm from 2019-2023 by failing to ensure Nayshaun received trauma therapy for his mother's murder and sexual reactive behaviors, leaving him emotionally damaged.

144.    GPCA specifically caused ongoing harm in 2023 by failing to adequately monitor his wellness and medical needs despite being assigned as his case manager and supervisor.

**WHEREFORE**, Plaintiff seeks damages jointly and severally against all Defendants as follows:

1.    Monetary damages, including compensatory damages against all Defendants;

2.    Punitive damages;

3.    Attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

4.    Such other relief as the Court deems proper.

**JURY TRIAL DEMANDED**

                            Respectfully Submitted,

                            **MINCEY FITZPATRICK ROSS, LLC**

BY:    /s/ Riley H. Ross III
        Riley H. Ross III, Esquire/ PA Bar No. 204676
        Zainab K. Shields, Esquire/ PA Bar No. 321181
        One Liberty Place
        1650 Market Street, 36th Floor
        Philadelphia, PA 19103
        Attorney for Plaintiff

Date:   October 27, 2025